UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 17-23874-CIV-MORENO

DAVID DISLER, and KURT WEBER,

    Plaintiffs,

vs.

ROYAL CARIBBEAN CRUISE LTD.,

    Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

### I. INTRODUCTION

David Disler and his partner, Kurt Weber, filed this action against Royal Caribbean Cruises, Ltd. following a medical incident that occurred on a Royal Caribbean vessel. Plaintiffs contend that Disler suffered a stroke while aboard the *Anthem of the Seas*, and that Royal Caribbean's failure to authorize Disler's medical evacuation left him with permanent brain damage and partial paralysis. According to Plaintiffs, Disler would have made a full recovery had the Captain of the cruise ship properly ordered the medical evacuation. They filed a seven-count complaint which Royal Caribbean subsequently moved to dismiss. For the reasons discussed below, Royal Caribbean's motion to dismiss is denied as to Count IV, the assumption of duty claim, but granted without prejudice as to Counts I–III, the negligence claims, and granted with prejudice as to Count V, the punitive damages claim, Count VI, the unseaworthiness claim, and Count VII, Weber's loss of consortium claim. If Plaintiff Disler desires to file a second amended complaint for Counts I–III, in addition to Count IV, it must do so no later than May 4, 2018.

## II. FACTUAL BACKGROUND

In October 2016, Disler and Weber took a vacation on Royal Caribbean's *Anthem of the Seas* cruise ship. At 8:00 AM on October 28, 2016, Disler suffered a stroke aboard the vessel and Weber immediately notified the ship's emergency personnel of Disler's condition. At the time of Disler's stroke, the Royal Caribbean vessel was approximately 24 hours away from returning to the Cape Liberty cruise port in Bayonne, New Jersey. When a medical evacuation was requested,[1] the *Anthem of the Seas* Captain denied the request and refused to provide Disler with any means of evacuating the ship to receive medical treatment. As a result, Disler allegedly did not receive proper medical attention for over 24 hours. Plaintiffs contend that, as a result of this delay, Disler sustained a severe brain injury that left him paralyzed in over half of his body.

Following Disler's injuries, Disler and Weber commenced this suit against Royal Caribbean. In it, they bring the following seven causes of action: (1) Florida state common law negligence; (2) direct corporate common law negligence; (3) common law negligent training; (4) assumption of duty under Restatement (Second) of Torts; (5) common law punitive damages; (6) violation of general maritime law; (7) common law loss of consortium. Royal Caribbean moves to dismiss all seven claims.

## III. STANDARD

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions," instead plaintiffs must "allege some specific factual basis for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). This tenet, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by

---

[1] It is not clear from the amended complaint who requested the medical evacuation.

factual allegations." *Id.* at 1950. Those "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In short, the complaint must not merely allege a misconduct, but must demonstrate that the pleader is entitled to relief. *See Iqbal*, 129 S. Ct. at 1950.

## IV. DISCUSSION

### A. Applicable Law

The parties disagree about whether state and common law or general maritime law governs this case. To be sure, the Plaintiff correctly notes that "in the absence of a well-defined body of maritime law relating to a particular claim, the general maritime law may be supplemented by either state law or general common law principles." *Wells v. Liddy*, 186 F.3d 505, 525 (4th Cir. 1999). However, Plaintiffs urge the Court to apply state law and common law principles that conflict with well-developed areas of maritime law. In such situations, state law must yield. *See Rinker v. Carnival Corp.*, 753 F. Supp. 2d 1237, 1241 (S.D. Fla. 2010). Accordingly, general maritime law controls this case. *Keefe v. Bahama Cruise Line*, 867 F.2d 1318, 1321 (11th Cir. 1989).

### B. Counts I–III: State and Common Law Negligence Claims

"To plead negligence in a maritime case, a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1253 (11th Cir. 2014). "Under federal maritime law, the duty of care owed by a cruise operator to its passengers is ordinary reasonable care under the circumstances[.]" *Gayou v. Celebrity Cruises Inc.*, No. 11-23359-CIV, 2012 WL 2049431, at 5* (S.D. Fla. June 5, 2012); *see also Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625 (1959); *Everett v. Carnival Cruise Lines, Inc.*, 912 F.2d 1355, 1358 (11th Cir. 1990).

3

Disler and Weber premise Counts I–III on the following allegations:

> ***Count I (Florida State Common Law Negligence):*** "Defendant had a common law duty to provide guests, such as Mr. Disler, with prompt medical attention, to properly diagnose Mr. Disler, to equip the vessel with necessary medical surveillance and treatment technologies, and to allow for Plaintiff to be medically evacuated prior to the ship reaching its final destination 24 hours after Defendant was notified about Plaintiff's condition." (Compl. ¶ 37.)
>
> ***Count II (Direct Corporate Common Law Negligence):*** "Defendant had a common law duty to create, enact, establish, communicate, promulgate, implement, require and/or enforce adequate policies, procedures and/or practices to properly and adequately address emergency medical situations on board the ship and ensure that passengers in need would receive adequate emergency medical treatment or transportation to an appropriate medical facility." (Compl. ¶ 50.)
>
> ***Count III (Common Law Negligent Training):*** "Defendant had a common law duty to train its employees to properly and adequately address emergency medical situations on board the ship and ensure that passengers in need would receive adequate emergency medical treatment or transportation to an appropriate medical facility." (Compl. ¶ 64.)

Royal Caribbean contends that it did not owe the duties Disler and Weber list in Counts I–III of their Amended Complaint. In the past, courts have held that a cruise ship "is not a floating hospital" and that cruise lines are not obligated to (1) provide passengers with medical attention or medical evacuation, (2) equip vessels with medical equipment, (3) implement policies and procedures for medical situations, or (4) train personnel to properly address medical situations. *See, e.g., Mumford v. Carnival Corp.*, 7 F. Supp. 3d 1243, 1248 (S.D. Fla. 2014) (noting that a carrier has no duty to provide medical transportation); *Gliniecki v. Carnival Corp.*, 632 F. Supp. 2d 1205, 1208 (S.D. Fla. 2009) (holding that a cruise line "has no duty to provide medical transportation policies or services"); *Zapata v. Royal Caribbean Cruises, Ltd.*, No. 12-21897-CIV, 2013 WL 1296298, at *3 (S.D. Fla. Mar. 27, 2013) ("A cruise line has no duty to provide doctors or other medical personnel as a ship is not a 'floating hospital.'"); *Butler v.*

*Carnival Corp.*, No. 14-21125-CIV, 2014 WL 5430313, at *7 (S.D. Fla. Oct. 24, 2014) (holding that a cruise line has no duty to provide a doctor or a functioning defibrillator).

However, the Eleventh Circuit's decision in *Franza v. Royal Caribbean Cruises, Ltd.* calls into question the rationale of those earlier decisions and counsels against the type of "broad immunity for cruise lines" that courts in this district have historically applied. 772 F.3d at 1246. "Many of the pre-*Franza* cases holding that a ship does not have a duty to secure medical transportation for its passengers relied on *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1367 (5th Cir. 1988)." *Gharfeh v. Carnival Corp.*, No. 17-20499-CIV, 2018 WL 1697025, at *9 (S.D. Fla. Apr. 6, 2018). But the Eleventh Circuit in *Franza* "declined to adopt the *Barbetta* rule because of, among other reasons, 'the evolution of legal norms, the rise of a complex cruise industry, and the progression of modern technology.'" *Id.* (citing *Franza*, 772 F.3d at 1228).

To be sure, *Franza* addressed the distinct issue of whether a cruise line could be held *vicariously liable* for its medical staff's malpractice. But the Eleventh Circuit's opinion still bears on direct liability claims because, as other courts in this district have pointed out, "it also contains a comprehensive overview of maritime negligence law and its development, and it analyzes myriad public policy concerns that militate in favor of adopting a more contemporary approach to cruise ship litigation." *Gharfeh*, 2018 WL 1697025, at *9. The Court in *Franza* was "particularly skeptical of the view that the patient always holds the critical reins in this particular context." *Franza*, 772 F.3d at 1242. It noted that "a passenger who falls ill aboard a cruise ship has precious little choice but to submit to onboard care" and "may have literally nowhere else to go." *Id.*

Accordingly, there is no blanket rule under maritime law that a cruise ship is never required to provide passengers with medical attention and medical evacuation. Nor is there a "special, free-floating, independent duty" under maritime law requiring a cruise line to provide a medical evacuation whenever a passenger requests one. *Gharfeh*, 2018 WL 1697025, at *10. Rather, a cruise line's potential liability hinges on whether it complied with its more general duty to exercise reasonable care under the circumstances. "With respect to the treatment of ailing

passengers, the exercise of reasonable care is defined as the 'duty to . . . furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances." *Rojas v. Carnival Corp.*, 93 F. Supp. 3d 1305, 1309–10 (S.D. Fla. 2015).

It is conceivable that Disler could allege a factual scenario that, if established at trial, might support the conclusion that Royal Caribbean owed, and breached, a duty under maritime law to medically evacuate Disler. But because Counts I–III allege claims under *state law and common law*, rather than maritime law, this Court presently lacks the opportunity to resolve that question. Accordingly, Counts I–III must be dismissed.

### C. Count IV: Assumption of Duty Under Restatement (Second) of Torts

Disler alleges that Royal Caribbean assumed a duty of care by virtue of its marketing materials touting the onboard "CareTeam." Federal courts have recognized that the "assumption of duty" doctrine, as set forth in § 323 of the Second Restatement of Torts, "is applicable in maritime cases." *Dunaway v. United States*, No. CIV. A. 98-2035, 2000 WL 64291, at *3 (E.D. La. Jan. 26, 2000) (citing *Indian Towing Co. v. United States*, 350 U.S. 61, 69 (1955)). Section 323 of the Second Restatement of Torts, which pertains to the negligent performance of undertaking to render services, provides that:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> > (a) his failure to exercise such care increases the risk of such harm, or
> >
> > (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1965). Royal Caribbean's website stated the following: "The CareTeam can help the affected guest or crew member with a wide range of services and support, including . . . [a]rranging air ambulance services to airlift the patient to a location that

6

can provide additional medical treatment and support." (Am. Compl. ¶ 72.) Disler contends that Royal Caribbean "failed to exercise reasonable care and breached its assumed duty by failing and/or refusing to arrange air ambulance services to airlift David Disler to a location that could provide the required and necessary medical treatment." (*Id.* ¶ 74.)

Royal Caribbean contends that it cannot be held liable under this "assumption of duty" theory because it did not actually begin to perform a medical evacuation that it subsequently ceased. Quite obviously, this is not what Disler challenges. Rather, they contend that Royal Caribbean cannot tout their sophisticated onboard medical capabilities—ostensibly to quell prospective passengers' concerns about access to appropriate medical care during their voyage—but then disclaim any obligation to furnish those advertised medical services. This Court agrees. Ultimately, the facts may indicate that Royal Caribbean had no duty to provide Disler with a medical evacuation in this particular instance. However, the Court is unwilling to enforce a blanket rule that cruise lines *never* owe such a duty. Having advertised its onboard medical services, it must at the very least defend its refusal to provide them in this case. Accordingly, Royal Caribbean's motion to dismiss Count IV is denied.

### D. <u>Count V: Common Law Punitive Damages</u>

In Count V, Disler attempts to state a claim for common law punitive damages. Royal Caribbean asserts that "a claim for punitive damages is not a freestanding cause of action." *Doe v. Royal Caribbean Cruises, Ltd*, No. 11-23323-CIV, 2011 WL 6727959, at *5 (S.D. Fla. Dec. 21, 2011). Courts in this district agree: "punitive damages is not a cause of action, but instead a remedy available to the plaintiff if he proves intentional misconduct or gross negligence by the Defendant[]." *Jarzynka v. St. Thomas Univ. of Law*, 310 F. Supp. 2d 1256, 1263 (S.D. Fla. 2004); *see also Moretta v. Miami-Dade Cty.*, No. 06-CIV-20467, 2007 WL 701009, at *10 (S.D. Fla. Jan. 23, 2007), *aff'd sub nom. Moretta v. Abbott*, 280 F. App'x 823 (11th Cir. 2008) (discussing "the defect in pleading punitive damages as an independent cause of action and not as a remedy"). As such, Count V is dismissed.

### E. Count VI: Violation of General Maritime Law

In Count VI, Disler alleges that the injuries stemming from his stroke "were caused solely by and due wholly to Defendant's negligence, carelessness, recklessness, unseaworthiness of the vessel and complete disregard for the welfare of their business invitees." (Am. Compl. ¶ 93.) Royal Caribbean interprets this somewhat ambiguous allegation as a claim for unseaworthiness. Disler characterizes it as "an alternative pleading which states a claim for which relief may be granted in the event that this Honorable Court rules that Plaintiffs' state and common law claims do not survive Defendant's Motion to Dismiss." (Resp. at 18.)

To the extent Plaintiffs intend this Count to state a negligence claim under general maritime law, it fails in this regard. The Count contains no more than a brief recitation of the elements of a negligence claim accompanied by conclusory allegations that Disler's injuries "were caused solely by and due wholly to Defendant's negligence, carelessness, [and] recklessness[.]" (Am. Compl. ¶ 93.) That type of pleading will not survive a motion to dismiss. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Alternatively, if Disler and Weber intend this count to state a claim against Royal Caribbean for unseaworthiness, they fail in that regard as well. As Royal Caribbean asserts, the doctrine of unseaworthiness protects only cargo and seamen. *See Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343, 1352 (S.D. Fla. 2008). The warranty "does not apply to passengers" and therefore is inapplicable in this case. *Id.* Accordingly, Count VI must be dismissed.

### F. Count VII: Common Law Loss of Consortium

Lastly, Weber alleges that he "has suffered the loss of consortium and has been deprived of his partner's love, companionship, comfort, affection, society, moral guidance, intellectual strength and physical assistance and the loss of the assistance and earnings of Plaintiff Disler." (Am. Compl. ¶ 96.) Royal Caribbean argues that the Court must dismiss Weber's claim for loss of consortium because general maritime law does not permit recovery on such a basis. The Court

8

agrees. The Eleventh Circuit has held that "neither the Jones Act nor general maritime law authorizes recovery for loss of society or consortium in personal injury cases." *Lollie v. Brown Marine Serv., Inc.*, 995 F.2d 1565, 1565 (11th Cir. 1993); *Berns v. Royal Caribbean Cruises Ltd.*, No. 14-21428-CIV, 2014 WL 11997835, at *3 (S.D. Fla. Aug. 26, 2014) (dismissing passenger's loss of consortium claim). Accordingly, Count VII is dismissed.

## V. CONCLUSION

For the reasons discussed above, Royal Caribbean's motion to dismiss is granted in part and denied in part. Specifically, the motion to dismiss is DENIED as to Count IV, and GRANTED without prejudice as to Counts I–III, and GRANTED with prejudice as to Counts V–VII.

DONE AND ORDERED in Chambers at Miami, Florida, this 23rd of April 2018.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

9