UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

DAVID DISLER,                                                         CASE NO: 1:17-cv-23874-FAM

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISE LTD.

    Defendants.
_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND SUPPORTING MEMORANDUM OF LAW

Defendant, ROYAL CARIBBEAN CRUISE, LTD. ("RCCL"), by and through its undersigned counsel, pursuant to Fed. R.Civ. P. 56 and S.D. Fla. L.R. 56.1, hereby moves for summary judgment on Counts I-IV of Plaintiff's Third Amended Complaint and certain damage claims, and in support thereof would state as follows:

### INTRODUCTION

1.     This action arises out of an incident that occurred aboard the RCCL *Anthem of the Seas* on October 28, 2016. [DE 21, ¶1]. Plaintiff David Disler alleges that on October 28th he suffered a stroke while the *Anthem* was at sea and was immediately taken to the ship's medical center for evaluation. [Id.] Plaintiff specifically alleges that the ship's medical doctors and nurses "determined that he would benefit from medical evacuation by helicopter," but the decision was rejected by the Captain because he did not want to deviate from the ship's course and arrive late into port. [DE 21, ¶2-6] Plaintiff further alleges that the Captain was motivated to reject the ship doctor's request for an emergency medical evacuation out of fear of RCCL's "corporate policies and practices for placing profits over the safety of its passengers." [DE 21, ¶50-52]

2.     In support of his case against RCCL, Plaintiff asserts the following claims: Count I: Negligence-General Maritime Law; Count II: Direct Corporate Negligence; Count III: Negligent Training; Count IV: Assumption of Duty Under Restatement (Second) of Torts § 324A. [DE 21]

3.     Plaintiff's entire case has been built upon a faulty premise that lacks evidentiary support, and has in fact, been disproven during discovery in this matter. In particular, the ship's physician who treated Mr. Disler during the time period in question, Dr. Ntsiki Mthombeni, has testified that the ship's Captain never rejected any medical decisions that she made concerning Mr. Disler, including whether or not he was a clinical candidate for a helicopter evacuation. [SOF ¶¶13-14] According to Dr. Mthombeni, she never ordered an emergency helicopter evacuation because it was not clinically warranted. [SOF ¶13] With this critical distinction firmly and irrefutably in place, Plaintiff's entire case falls apart.

## SUMMARY OF ARGUMENT

RCCL is entitled to summary judgment as to Count I because Plaintiff has failed to offer any expert testimony that RCCL was negligent and/or breached the standard of care for each of the enumerated allegations set forth in Paragraph 43, and that (2) any such purported breaches were the proximate cause of harm.

RCCL is entitled to summary judgment as to Count II because Plaintiff has failed to offer any evidence that RCCL breached a duty by enacting and enforcing policies and sanctions related to being late in port, and that the Captain's decision to allegedly reject the ship's physician's decision to evacuate Plaintiff was motivated by fear of such corporate policies. Not only has Plaintiff failed to produce any evidence to establish that such policies and/or procedures to sanction a Captain for being late to a port exist, but the uncontroverted evidence produced during discovery has also established that the decision not to order an evacuation was made by the doctor based

upon her medical judgment, as opposed to any purported "fears" on the part of the Captain. Additionally, RCCL is entitled to summary judgment as to Count II because Plaintiff has failed to offer any evidence or expert testimony to support allegations that the *Anthem's* medical staff was not adequately staffed with medical professionals during the time period in question.

RCCL is entitled to summary judgment as to Count III because Plaintiff has failed to provide any evidence or offer any expert testimony to support the allegations that a helicopter evacuation was not ordered because the ship Captain was not adequately trained and/or because he failed to "heed the advice, recommendations and/or demands of the on board medical staff."

RCCL is entitled to summary judgment as to Count IV because Plaintiff has failed to offer any evidence or expert testimony to support the allegations that RCCL assumed a duty to medically evacuate and/or transport Plaintiff to the nearest shoreside facility by virtue of advertising its Care Team services on its website. Moreover, both Mr. Disler and Mr. Weber acknowledged the terms and conditions of the Passenger Ticket Contract prior to the cruise which specifically disclaims any such duty.

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered if the pleadings, depositions, affidavits, and other materials in the record show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 32. In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving

20639031.v1

party's case necessarily renders all other facts immaterial. Id. at 323; *see also* Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993).

## I.   RCCL IS ENTITLED TO SUMMARY JUDGMENT AS TO COUNT I

Plaintiff has asserted a laundry-list of boilerplate allegations in Count I of the Third Amended Complaint that is premised upon the conclusory allegation that a helicopter evacuation did not take place in this case because the Captain overruled the ship physician's decision to request one from the U.S. Coast Guard. However, the Plaintiff has failed to establish any evidence to support such a claim. In fact, all of the evidence elicited during discovery in this case has confirmed that the doctor never ordered a helicopter evacuation because she did not believe it was medically warranted. [SOF ¶¶13-14] Plaintiff has not, and can not, produce any evidence to the contrary.

It is the Plainiff's burden to prove that RCCL breached the standard of care and that such breach was a proximate cause of harm. See Franza v. Royal Caribbean Cruise, Ltd., 772 F.2d 1225, 1254 (11th Cir. 2014). In order to sustain his burden, expert testimony is required in order for Plaintiff to establish that RCCL and/or the ship physician deviated from the standard of care, and that such deviation was the proximate cause of the injury. See e.g. O'Brien v. NCL (Bahamas), Ltd., 288 F.Supp. 3d 1302, 1312 (S.D. Fla. Dec. 28, 2017); Kellner v. NCL (Bahamas),Ltd. Case No. 15-23002-CIV-Altonaga/O'Sullivan, 2016 WL 4440510 at *1 (S.D. Fla. Aug. 22, 2016); *see also* Jones v. Royal Caribbean Cruises, Ltd., No. 12-20322-CIV, 2013 WL 8695361, at *6 (S.D. Fla. Apr. 4, 2013).

Plaintiff has failed to produce any experts to opine that the ship's doctor breached the standard of care of a cruise ship physician when she determined that a helicopter evacuation was

not medically warranted. Accordingly, Defendant is entitled to summary judgment as to Count I of the Third Amended Complaint.

Additionally, Plaintiff has failed to produce any evidence during discovery to support the remaining laundry list of boilerplate allegations contained within Paragraph 43 of the Third Amended Complaint. Specifically, Plaintiff has failed to produce any evidence or disclose any experts to opine that RCCL by and through its agents, crew, ostensible agents, servants and/or employees were negligent by:

A. failing to follow and/or adopt appropriate policies and/or procedures regarding medical emergencies;

B. failing to evaluate medical risks associated with failing to timely medically evacuate guests suffering from medical emergencies;

C. failing to provide Plaintiff with adequate and prompt treatment to prevent further injury;

D. violating and failing to comply with the federal and state statutes, local ordinances and all other rules, enactments and regulations applicable or in effect industry-wide"[1]

E. failing to have an adequate medical facility;

F. failing to staff the ship with adequate medical professionals;

G. failing to have appropriate shipboard facilities for promptly and properly treating guests who suffer a stroke;

H. failing to build, equip, stock and staff the ship properly in order to address a medical emergency;

I. failing to properly and promptly treat the Plaintiff;

---

[1] Plaintiff has similarly failed to establish any specific federal or state statues, local ordinances or "other rules" that RCCL purportedly violated.

20639031.v1

      J.      failing to timely diagnose the Plaintiff;

      K.      failing to adequately treat Plaintiff's stroke;

      L.      failing to stabilize Plaintiff until he was medically evacuated to an appropriate shore side medical facility;

      M.      failing to provide proper medical care and/or ensure proper medical care was received;

      M.      failing to ensure the vessel was equipped with medical equipment and supplies necessary to provide proper medical care

      N.      being otherwise negligent and grossly negligent as may appear from facts that may be determined during discover (sic) or trial.

Notably, although it is not the Defendant's burden to affirmatively disprove Plaintiff's liability theories, RCCL did retain and timely disclose the expert report of Dr. John Bradberry to address the issue of the applicable standard of care in this unique maritime setting. [Ex. A] Dr. Bradberry is a licensed physician in Florida and Georgia who is triple board certified in emergency medicine, family medicine and administrative medicine. [Id., pg. 1, ¶¶1-3] He also previously served eight (8) years as a shipboard physician for Carnival Cruise Lines before eventually being promoted to Medical Director over the entire fleet, where he remained for an additional (7) seven years. [Id.] Upon review and analysis of the record in this case, Dr. Bradberry opined that Plaintiff's condition was correctly and timely diagnosed by Dr. Mthombeni, that Plaintiff's condition was appropriately treated while in the ship's medical center, that the risks of an emergency evacuation did not warrant ordering an evacuation, and that her decision not to order an emergency medical evacuation was not a deviation of the standard of care for a cruise ship doctor. [Id., pg. 3, ¶1-2, 8] As Plaintiff has failed to produce an expert to opine to the contrary,

the undisputed evidence in this case is that Plaintiff was timely diagnosed, appropriately treated in the ship's medical center, and that Dr. Mthombeni's decision not to order a helicopter evacuation was not a deviation of the standard of care for a cruise ship physician.

As it relates to the issue of whether RCCL adequately staffed the medical center with adequate medical professionals, Plaintiff has similarly failed to produce any evidence to support such claims. Dr. Mthombeni obtained her medical degree from the University of Capetown in 2010, completed a two-year internship at the Chris Hani Baragwanath Hospital in 2012, participated in one year of community service at Johannesburg General Hospital in 2013, and then entered private practice working in various emergency rooms in Johannesburg. She began serving as a ship's physician aboard RCCL vessels in 2014. [SOF 8] Plaintiff has failed to produce any evidence or disclose any experts to establish that Dr. Mthombeni's qualifications were in any way insufficient or below the standard of care for a cruise ship infirmary. To the extent Plaintiff is alleging RCCL was negligent in hiring Dr. Mthombeni, he similarly has failed to establish any evidence to support such claims. Negligent hiring occurs when, prior to the time the employee or independent contractor is actually hired, the employer knew or should have known of an employee or independent contractor's unfitness. *See* Tello v. Royal Caribbean Cruises, Ltd., 939 F.Supp. 2d 1269, 1276 (S.D. Fla. 2013); Garcia v. Duffy, 492 So.2d 435, 438 (Fla. 2d DCA 1986). The issue of liability focuses primarily upon the adequacy of the employer's pre-employment investigation into the employee or independent contractor's background. *See* Tello, 939 F. Supp. 2d at 1276. In order to support a claim for negligent hiring, a plaintiff must establish that (1) the employee/contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury. *See* Doe v. NCL

20639031.v1

(Bahamas) Ltd., 2016 U.S. Dist. LEXIS 150817 at *8 (S.D. Fla. Oct. 27, 2016); Witover v. Celebrity Cruises, Ltd., 161 F.Supp. 3d 1139, 1148 (S.D. Fla. 2016); Smolnikar v. Royal Caribbean Cruises, Ltd., 787 F.Supp. 2d 1308 (S.D. Fla. 2011). To satisfy the second element of a negligent hiring claim, a plaintiff must allege facts showing that Defendant was put on notice of the harmful propensities of the employee or independent contractor. *See* Doe, 2016 U.S. Dist. LEXIS 150817 at *8-9; Flaherty v. Royal Caribbean Cruises, Ltd., 172 F.Supp. 3d 1348, 1351-52 (S.D. Fla. 2016); Tello, 939 F.Supp. 2d at 1276; Stires v. Carnival Corp., 243 F.Supp. 2d 1313, 1318 (M.D. Fla. 2002).

Plaintiff has failed to allege, let alone establish any evidence in this case that could create a plausible inference that RCCL either 'knew or reasonably should have known of [any] particular incompetence or unfitness' or the incompetence that Defendant knew or should have known of caused Plaintiff's injury")(emphasis in original); Gittel v. Carnival Corp., 2015 U.S. Dist. LEXIS 75823 at *5-6 (S.D. Fla. 2015)(dismissing claim for negligent hiring where "the complaint contain[ed] only conclusory allegations as to Carnival's knowledge or any particular incompetence or unfitness," which allegations were "no more than a threadbare recital of the 'knowledge' element of this cause of action" with "no factual content sufficient to support it"); Summers v. Carnival Corp., 2015 U.S. Dist. LEXIS 180787 at *15 (S.D. Fla. April 6, 2015)(granting motion to dismiss "because Plaintiff has failed to allege facts that are suggestive enough to render each element of his claim for negligent hiring, retention and training plausible"); Tello, 939 F.Supp. 2d at 1276 (dismissing claim for negligent hiring where cruise passenger "allege[d] no facts indicating that Royal Caribbean's crewmembers were unfit for employment and that Royal Caribbean knew or should have known of their unfitness"); Gavigan v. Celebrity Cruises Inc., 843 F.Supp. 2d 1254, 1261 (S.D. Fla. 2011)(noting that plaintiff only asserted conclusory allegations in claim for

negligent selection and ruling that "[t]he absence of any facts to support a negligent selection claim requires dismissal").

To the extent Plaintiff is attempting to argue that the medical staff was inadequate because they erred in this case, it would still be an insufficient basis upon which to impose liability upon Royal Caribbean for negligent hiring. *See* Jackson v. Carnival Cruise Lines, 203 F. Supp.2d 1367, 1374 (S.D. Fla. 2002).

## II.  RCCL IS ENTITLED TO SUMMARY JUDGMENT AS TO COUNT II

Plaintiff asserts in Count II of the Third Amended Complaint that RCCL breached its duty to exercise ordinary reasonable care by enacting and enforcing policies and sanctions related to being late into port. [DE 21, ¶ 47] Plaintiff further alleges that the Captain's decision to reject the ship doctor's request for a helicopter evacuation was motivated by a "fear of being late and potential repercussions from RCCL for not meeting the necessary, established port arrival deadlines." [DE 21, ¶50] However, Plaintiff's allegations are again based upon a faulty premise considering that the only evidence in the case is that a helicopter evacuation was not ordered because it was never deemed medically warranted by the doctor. [SOF 13] More importantly, the record is devoid of any evidence that there are any such policies and/or procedures in existence at RCCL that would penalize a ship Captain for being late to a port, especially in the case of a medical emergency. In fact, RCCL specifically denies that any such policy exists. [SOF 15] Accordingly, RCCL is entitled to summary judgment as to Count II of Plaintiff's Third Amended Complaint.

## III.  RCCL IS ENTITLED TO SUMMARY JUDGMENT AS TO COUNT III

In Count III, Plaintiff alleges that the Captain failed to recognize the "serious and emergent nature of Plaintiff's medical condition and dire need for medical care because he was not properly and/or adequately trained and/or instructed" by RCCL. [DE 21, ¶66] Plaintiff further alleges that

the Captain "failed to heed the advice, recommendations and/or demands of the on board medical staff for Plaintiff to be transported to the nearest shoreside medical facility for treatment because he was improperly trained." [DE 21, ¶67] Finally, Plaintiff also alleges that the medical personnel on board the *Anthem* and the Captain failed to adequately communicate regarding Plaintiff's medical emergency medical condition because RCCL failed to properly and/or adequately train and/or instruct the medical personnel and/or Captain with regards to appropriate and adequate communication during a medical emergency. [DE 21, ¶70]

As it relates to Plaintiff's allegations that the Captain failed to recognize the serious nature of Plaintiff's medical condition, the evidence in the record conclusively establishes that he has no involvement in medical decision making aboard the vessel, including whether or not a helicopter evacuation is medically warranted. [SOF 11]. Likewise, the record is entirely devoid of any evidence that the Captain failed to "heed the advice" of the ship physician. Rather, the record in this case clearly establishes that the ship physician determined based upon her own medical judgment that a helicopter evacuation was not medically warranted. [SOF 13]

To the extent Plaintiff is alleging that RCCL is negligent for failing to properly train the Captain and/or ship physician on how to communicate a medical emergency, the record is again devoid of any evidence to support such a claim. To the contrary, Dr. Mthombeni testified that she merely contacted the ship's bridge to inquire as to the ship's location in the event a helicopter evacuation *might* be necessary in the event he became worse. [Depo. Mthombeni 143: 1-10] Clearly by virtue of her role as the ship's senior medical officer, it was exclusively within the purview and professional judgment of Dr. Mthombeni to determine whether or not a helicopter evacuated was medically warranted. Thus, any information she chose to relay to the ship's bridge with regard to Plaintiff's medical condition is irrelevant. Moreover, Plaintiff has not provided any

expert testimony to support an allegation that Dr. Mthombeni breached the standard of care for a cruise ship physician in how or why she made certain medical decisions, including what information she chose to share with the ship's bridge about Plaintiff's condition. Accordingly, RCCL is entitled to summary judgment as to Count III of Plaintiff's Third Amended Complaint.

### IV.   RCCL IS ENTITLED TO SUMMARY JUDGMENT AS TO COUNT IV

Finally, Plaintiff asserts in Count IV of the Third Amended Complaint that RCCL assumed a duty to evacuate him from the vessel by mentioning services offered by its CareTeam Department on its company website. In particular, Plaintiff asserts that the website's reference to the CareTeam providing "logistical support and reassurance in the event a guest experiences a personal emergency while sailing on an RCCL vessel," including "arranging air ambulance services to airlift a patient to a location that can provide additional support," created an assumed duty of care under Restatement 324A. [DE 21 ¶¶77-84]

As a threshold matter, the evidence in this case confirms that Plaintiff has grossly distorted the role and function of RCCL's CareTeam. Specifically, the RCCL CareTeam's role is to be a "support system" by providing emotional support for a guest or family member in the event of a medical emergency once they reach shore. [Depo. Gonzalez, 148:16-149:5] The CareTeam has absolutely no involvement in facilitating an air/sea evacuation at sea when a passenger is still on the ship. [Depo. Gonzalez, 149:7-12] Specifically as it relates to assisting in arranging air ambulance services, the CareTeam's role is simply to help family members obtain contact information and to assist in communicating with the hospital after the patient has already been transferred to a shoreside hospital. [Depo. Gonzalez, 145: 4-124] [2]

---

[2] To be clear, an air ambulance is not a US Coast Guard helicopter that performs evacuations at sea. It is a ground placed airplane that transfers patients from one hospital to another after a patient has been removed from the ship. [Depo. Gonzalez 144:9-21]

More importantly, the undisputed evidence in this case confirms that RCCL specifically disclaims any particular duty to transport its guests in the event of a medical emergency that occurs in a remote location, which were contractual terms and conditions that Plaintiff and his husband acknowledged prior to the subject cruise. [SOF 18-19] Specifically, Paragraph 4 of the Passenger Ticket Contract clearly and conspicuously states:

**4. MEDICAL CARE AND OTHER PERSONAL SERVICES:**

a. Availability of Medical Care. Due to the nature of travel by sea and the ports visited, the availability of medical care onboard the Vessel and in ports of call may be limited or delayed and medical evacuation may not be possible from the Vessel while at sea or from every location to which the Vessel sails. [SOF 17]

WHEREFORE, based on the foregoing, Defendant ROYAL CARIBBEAN CRUISE, LTD. respectfully requests that the Court grant summary judgment in its favor as to all counts asserted in Plaintiff's Third Amended Complaint.

Respectfully submitted,

s/ Michael J. Drahos
GOLDBERG SEGALLA, LLP
Michael J. Drahos, Esquire
Florida Bar No. 0617059
222 Lakeview Avenue, Suite 800
West Palm Beach, FL 33401
Telephone: (561) 618-4450
Fax: (561) 618-4549
Email designations:
mdrahos@goldbergsegalla.com
lparker@goldbergsegalla.com

20639031.v1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 24, 2018, the foregoing document was electronically filed with the Clerk of the /court using CM/ECF to the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/Michael J. Drahos*
Michael J. Drahos

SERVICE LIST

CASE NO.: 1:17-cv-23874-FAM

Herman J. Russomanno, Esq.
Robert J. Borrello, Esq.
Herman J. Russomanno III, Esq.
Russomanno & Borrello, P.A.
Museum Tower – Penthouse 2800
150 West Flagler
Miami, FL 33130
(305) 373-2101
(305) 373-2103 FAX
hrussomanno@russomanno.com
rborrello@russomanno.com
herman2@russomanno.com


Jeffrey P. Goodman, Esq. *(pro hac vice)*
Saltz Mongeluzzi Barrett & Bendesky, PC
One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA 19103
(215)575-2970
(215)496-0999
jgoodman@smbb.com
SDordick@SMBB.com
JGlackman@SMBB.com

20639031.v1